## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THE CONNECTICUT LIGHT & POWER
COMPANY D/B/A EVERSOURCE
ENERGY, AND EVERSOURCE ENERGY
SERVICE COMPANY,

            Plaintiffs,

    v.

USIC LOCATING SERVICES, LLC, AND
NORTHLINE UTILITIES, LLC,

            Defendants.

Case No. 3:20-cv-00403-CSH

**July 22, 2021**

## OMNIBUS RULING ON PENDING MOTIONS

**HAIGHT, Senior District Judge:**

In this diversity action, Plaintiffs, The Connecticut Light & Power Company, d/b/a Eversource Energy ("CL&P") and Eversource Energy Service Company ("Eversource"), sue Defendants, USIC Locating Services, LLC ("USIC") and Northline Utilities, LLC ("Northline"). The action arises out of alleged damage to CL&P's underground electrical facilities including, but not limited to, an underground 345kV transmission line/cable (the "Electrical Facilities") during Northline's excavation and/or drilling in connection with utility pole setting work along the Post Road in Fairfield, Connecticut (the "Excavation Area"). *See* Doc. 1.

Plaintiffs state that, at all relevant times, USIC was the utility locator and mark out contractor for CL&P, *id.* at ¶ 14, Northline was retained by The United Illuminating Company, *id.* at ¶ 9, and Eversource provided administrative support and contract services for CL&P, *id.* at ¶ 2. Plaintiffs further aver that USIC worked on behalf of CL&P pursuant to the terms of (1) a Cover Agreement between Eversource and USIC dated February 21, 2017 and (2) "attachments thereto

1

which specifically incorporated by reference Eversource Energy General Terms and Conditions –
Services, Equipment and Revision 11 Dated 8/1/2016 ('GTCS')" *Id.* at ¶ 4.   Plaintiffs refer
collectively to the Cover Agreement, the attachments, and GTCS as the "Contract" and allege that
it "required that USIC provide, among other things, utility locating and mark out services for
[Eversource] and/or its affiliated companies including CL&P." *Id.* at ¶ 4-5.

Plaintiffs claim that, pursuant to Connecticut's Call Before You Dig ("CBYD") Law,
Conn. Gen. Stat. § 16-345, *et. seq.*, which sets forth the statutory requirements prior to any
excavation within Connecticut, Northline submitted a CBYD ticket ("CBYD Ticket") for the
replacement of two utility poles on the Post Road in Fairfield, Connecticut.   *Id.* at ¶¶ 10-12.   The
purpose of this ticket was to notify certain owners and operators of underground facilities prior to
proposed excavations.   *Id.* at ¶ 11.   Northline's CBYD Ticket "set forth, among other things, the
location in which the excavation and/or drilling by Northline was to be performed."   *Id.* at ¶ 12.
Specifically, it contained "a written description as well as a hand-drawn map detailing the area in
which the excavation and/or drilling by Northline was to be performed." *Id.* at ¶ 13.   "The locations
of the two poles to be replaced were identified by white X marks on the existing poles, white tipped
stakes in the location of the replacement poles, and white paint in the street with arrows pointing
toward the location of the poles." *Id.*   USIC responded to Northline's CBYD Ticket and reported
that the Excavation Area was clear of any CL&P underground facilities, equipment and/or utilities.
*Id.* at ¶¶ 14-15.

Plaintiffs further claim that, on or about March 28, 2018, while excavating and/or drilling
in the Excavation Area, "one or more agents(s), servant(s), and/or employee(s) of Northline came
into contact with, undermined and/or damaged CL&P's Electrical Facilities" and caused
substantial harm.   *Id.* at ¶ 16.   Plaintiffs allege that "Northline, its agents, servants, and/or

employees, did not notify CL&P" of the damage to its Electrical Facilities.  *Id.* at ¶ 17.  As a result, Plaintiffs state that "CL&P was caused to undertake investigation and testing of its equipment and utilities in order to determine the cause and location at great expense" and that CL&P "did not immediately discover" the damage.  *Id.* at ¶¶ 18, 19.  Accordingly, CL&P incurred losses and expenses to "repair and/or replace" the Electrical Facilities at a cost of over $2 million.  *Id.* at ¶ 20.

According to Plaintiffs, USIC is responsible for the damage to the Electrical Facilities under the Contract.  *Id.* at ¶ 86.  Moreover, Eversource provided USIC with written notice of the March 28, 2018 incident and "demanded that USIC respond to said notice and agree to provide reimbursement for said damage in accordance with USIC's obligations under the Contract."  *Id.* at ¶ 87.  However, Plaintiffs claim, USIC has failed to respond to this written notice and failed to provide reimbursement; accordingly, it has "breached its obligations."  *Id.* at ¶¶ 88-89.

Plaintiffs' original Complaint, filed March 25, 2020, alleges one count of negligence against USIC (Count One, CL&P v. USIC), one count of negligence against Northline (Count Two, CL&P v. Northline), and one count of breach of contract against USIC (Count Three, Eversource v. USIC).  Defendant USIC filed its Answer on June 18, 2020, and Defendant Northline filed its Answer on June 30, 2020.  Both Answers deny several allegations in Plaintiffs' original Complaint and raise multiple affirmative defenses, including that Plaintiffs failed to state a claim and that Plaintiffs' claims are barred by the doctrine of laches, waiver, and/or estoppel.  *See* Doc. 10; Doc. 13.  Currently pending before the Court are (I) Plaintiffs' Motion to Amend the Complaint ("Motion to Amend"), which Northline opposes; (II) USIC's unopposed Motion to file a Crossclaim against Northline ("Crossclaim Motion"); (III) Plaintiffs' Consent Motion for Entry

of a Protective Order ("Motion for Protective Order"); and (IV) the Plaintiffs' Consent Motions for Extension of Time.  This Ruling resolves these motions.

## I.     PLAINTIFFS' MOTION TO AMEND THE COMPLAINT

On January 29, 2021, Plaintiffs filed their Motion to Amend.  *See* Doc. 33.  This motion proposes adding a statutory claim to the original Complaint's count of negligence against Northline, Count Two.  In the original Complaint, Count Two alleged that Northline was negligent because it "failed to notify CL&P that it made contact with, undermined, and/or damaged CL&P's Electrical Facilities. . . ." Doc. 1 at ¶ 63(F).  By contrast, the proposed amendment alleges that Northline was negligent because it "failed to notify CL&P that it made contact with, undermined, damaged and/or ***suspected it had damaged CL&P's Electrical Facilities***. . . ***in violation of Conn. Gen. Stat. 16-355*** . . . ."  Doc. 33-1 at ¶ 63(F) (emphasis added to illustrate changes).

Section 16-355 of the Connecticut General Statutes, entitled "Procedure when contact is made with or damage is suspected or done to underground facilities" states:

> When any contact is made with or any damage is suspected or done to any underground facility of a public utility, the person, public agency or public utility responsible for the operations causing the contact, suspected damage or damage shall immediately notify the public utility whose facilities have been affected, which shall dispatch its own personnel as soon as reasonably possible to inspect the underground facility and, if necessary, effect temporary or permanent repairs.

The Parties' Joint Proposed Planning Memorandum, which the Court approved as modified on August 3, 2020, does not set a deadline for amending the Complaint.  Instead, it notes that "Plaintiffs should be allowed to file any motion to amend the pleadings in accordance with the requirements of Rule 15 of the Federal Rules of Civil Procedure and Rule 7(f) of the Local Rules

of the United States District Court for the District of Connecticut."[1]  Doc. 21 at 5.  Pursuant to

Local Rule 7(f)(1), Plaintiffs included a statement that Defendant USIC consents to the motion

and Defendant Northline intends to object.  Doc. 33 at 1.  In line with Local Rule 7(f)(2), Plaintiffs

provided both a redlined version and a clean version of their proposed amended pleading.  *See*

Doc. 33-1; Doc. 33-2.

Rule 15(a) of the Federal Rules of Civil Procedure governs the pretrial amendment of

pleadings.  It directs the Court to "freely give leave [to amend] when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "Whether to grant leave to amend ultimately lies within the court's discretion,

taking into account factors set forth by the United States Supreme Court in *Foman v. Davis*, 371

U.S. 178, 182 (1962)."  *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2019 WL 6999959, at *2

(D. Conn. Dec. 21, 2019).  In *Foman*, the Supreme Court elaborated on the liberal mandate of Rule

15(a):

> In the absence of any apparent or declared reason—such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc.—the leave
> sought should, as the rules require, be 'freely given.'

371 U.S. at 182.  It is "rare that such leave should be denied . . . especially when there has been

no prior amendment."  *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  The

party opposing the motion for leave to amend has the burden of establishing that an amendment

---

[1] Plaintiffs note that in cases "where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  Doc. 33-3 at 2 (quoting *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003)).  This "more onerous 'good cause' standard applies where a scheduling order sets a deadline for amending a complaint."  *Ramos v. Town of E. Hartford*, No. 3:16-CV-166 (VLB), 2019 WL 522504, at *2 (D. Conn. Feb. 11, 2019) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)).  The scheduling order in this case does not set a deadline for amending the Complaint and bases Plaintiffs' leave to amend on the requirements of Rule 15 of the Federal Rules of Civil Procedure.  Accordingly, the Court will evaluate Plaintiffs' Motion to Amend under the Rule 15 standard.

would be prejudicial, and the opposing party likewise bears the burden of establishing that an amendment would be futile. *See, e.g.*, *Hoffman v. City Coll. of New York*, No. 20 CIV. 1729 (PGG), 2021 WL 1226498, at \*4 (S.D.N.Y. Mar. 30, 2021) (citations omitted); *Prompt Nursing Emp. Agency LLC v. Valdez*, 222 F. Supp. 3d 194, 200 (E.D.N.Y. 2016) (citations omitted).

Plaintiffs claim that they "simply seek to allege with greater specificity that Northline negligently violated the standards of Conn. Gen. Stat. § 16-355." Doc. 33-3 at 3. They argue that the "amendment merely provides notice to Northline of the statute Plaintiffs claim [Northline] violated based substantially on conduct already alleged in the negligence count of the Complaint" – that is, Northline's alleged failure to notify CL&P. *Id.* at 4. Defendants counter that Plaintiffs "oversimplif[y] the change that the . . . proposed amendment seeks to make" and oppose Plaintiffs' Motion to Amend on three grounds, none of which provide an adequate basis for denying it. Doc. 34-1 at 5. The Court discusses each of these grounds in turn.

## A.  Undue Prejudice

Northline argues that Plaintiffs' proposed amendment would be prejudicial because it sets forth a "new theory of negligence requiring a complete shift in strategy after discovery is well underway." *Id.* at 5. Specifically, Northline claims that Plaintiffs' original allegations "sounded purely in common law negligence" and therefore Northline's "strategy, defense, and expert preparation has focused exclusively on . . . assessing an ordinary reasonableness standard for excavations in dig sites with no marked utilities." *Id.* Yet, Northline contends, the addition of Plaintiffs' alleged violation of a statutory standard of care, commonly referred to as negligence per se, means that "Northline will be required to expend significant additional resources to conduct discovery, research the legislative history and intent of the statute, and prepare a new expert strategy, as well as abandon the other previously acquired resources focused on the prior theory of

liability." *Id.*; *see also id.* at 6 (quoting *Law v. Camp*, 116 F. Supp. 2d 295, 303 (D. Conn. 2000) (stating that, to prove negligence per se, plaintiff must be in the class of persons for whose benefit the statute was enacted and show that the violation of the statute was a proximate cause of the injury)).

Prejudice to the opposing party is "typically the most important consideration in evaluating a motion to amend a pleading." *Lacher v. C.I.R.*, 32 Fed. Appx. 600, 603 (2d Cir. 2002). "However, only *undue* prejudice justifies denial of leave to amend." *A.V.E.L.A., Inc. v. Est. of Monroe*, 34 F. Supp. 3d 311, 317 (S.D.N.Y. 2014). Prejudice results when the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan v. New York City Department of Corrections,* 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir.1993)).

"Whether a party had prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to this determination." *Connolly v. United States*, No. 3:18-CV-00114 (VAB), 2020 WL 6572737, at *6 (D. Conn. Nov. 4, 2020); *see also Est. of Monroe*, 34 F. Supp. 3d at 317 (citing *Monahan*, 214 F.3d at 284). Moreover, "the procedural posture of a case, including the stage of discovery and whether dispositive motions have been filed, may also be weighed." *Connolly*, 2020 WL 6572737, at *6; *see also Est. of Monroe*, 34 F. Supp. 3d at 317 (citing *Grochowski*, 318 F.3d at 86 (upholding denial of leave to amend where amendment was sought after discovery had closed and while a summary judgment motion was pending)).

However, "[a]llegations that an amendment will require the expenditure of additional time, effort, or money do not [themselves] constitute 'undue prejudice.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (citing *Block*, 988 F.2d at 351). Similarly, an "adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *JPMorgan Chase Bank, N.A. v. IDW Group*, LLC, No. 08 Civ. 9116, 2009 WL 1357946, at *4 (S.D.N.Y. May 12, 2009) (quoting *United States v. Continental Illinois National Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir.1989)).

Here, as Northline acknowledges, "the underlying *factual* allegations of the proposed statutory amendment are unchanged from those in the original [C]omplaint." Doc. 34-1 at 5. This weighs in favor of granting Plaintiffs' Motion to Amend. Indeed, in this District, plaintiffs have been allowed to add a negligence per se claim to a count alleging negligence when their "claims for negligence and negligence per se are based on the same alleged failures by the Defendants" and "the proposed negligence per se claim seeks to only add the fact that those failures violated a Connecticut regulation." *Colon v. Metro-N. Commuter R.R. Co.*, No. 3:13-CV-325 (AWT), 2014 WL 12935350, at *5 (D. Conn. Mar. 25, 2014)

The procedural posture of this case also supports Plaintiffs' Motion to Amend. No dispositive motions have yet been filed. Plaintiffs represent that, at the time they responded to Northline's opposition to their Motion to Amend, Northline had not served written discovery requests upon Plaintiffs or taken any depositions. Doc. 35 at 3 n. 1. Moreover, according to Plaintiffs' June 17, 2021 Consent Motion for Extension of Time, the Parties are "in the process of responding to each other's interrogatories and requests for production, and they are discussing the scheduling of depositions." Doc. 45 at 1. The Parties do not indicate that any depositions have

taken place, and they request that all discovery deadlines be extended incrementally from proposed extended deadlines in a prior motion.  *Id.* at 2.

Finally, judicial efficiency weighs in favor of allowing Plaintiffs' proposed amendment. *See Duling v. Gristede's Operating Corp.,* 265 F.R.D. 91, 102 n. 5 (S.D.N.Y.2010) ("Where, as here, the original and proposed claims are interrelated, it also serves judicial efficiency to permit them to be brought in the same action.").  Since the proposed negligence per se amendment arises "from the same course of conduct" as Plaintiffs' original negligence claim against Northline, it is appropriate that these claims be adjudicated together.  *Est. of Monroe*, 34 F. Supp. 3d at 319.

Therefore, Northline's concerns about expending additional resources to adjust its litigation strategy are not adequate grounds for denying Plaintiffs' Motion to Amend.  Moreover, the Court's order *infra*, which grants the Parties' June 17, 2021 Consent Motion for Extension of Time, should mitigate any prejudice resulting from Northline's need to conduct additional discovery.  *See, e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 04 Civ. 1514, 2010 WL 445192, at *12 (S.D.N.Y. Feb. 8, 2010) (finding that any "prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule" and collecting cases).

### B.  Undue Delay

Northline separately urges the Court to deny Plaintiffs' Motion to Amend because Plaintiffs' proposed amendment was "made after a long delay and without the provision of any explanation for this delay."  Doc. 34-1 at 3.  Northline argues that there was "nothing preventing" Plaintiffs from including their statutory claim in the original Complaint, since Section 16-355 "has existed in its current form since 2015, well before the alleged damage occurred in March 2018, or when the Plaintiff filed its original Complaint in March 2020."  *Id.* at 4.  Northline further claims

that Plaintiffs were "certainly aware of the potential for statutory violations" arising from allegations in its original Complaint. *Id.* "Indeed," Northline states, "the first count against Codefendant, [USIC], alleges a similar statutory violation as the one Plaintiff now attempts to add to its claims against Northline." *Id.*

However, as Northline concedes, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *see also Mercer v. Schriro*, No. 3:16-CV-329 (CSH), 2019 WL 4017309, at *5 (D. Conn. Aug. 26, 2019); *Roller Bearing Co. of Am. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 385 (D. Conn. 2008) (citations omitted) ("[W]hile the addition of a new claim or a change in theory of recovery through amendment may be a factor which contributes to the opposing party's prejudice, it does not constitute undue prejudice per se."). As discussed *supra*, Northline has not been unduly prejudiced by Plaintiffs' proposed amendment. Northline also does not allege that Plaintiffs seek leave to amend with ill motive or an intent to obstruct the proceedings in this case. *See also* Doc. 33-3 at 5 ("[A]ny delay by Plaintiffs in seeking amendment was not in bad faith . . . .").

Moreover, Plaintiffs' alleged delay in seeking leave to amend is not significant enough to derail their motion. Plaintiffs filed their original Complaint on March 25, 2020, and each Defendant answered individually in June of 2020. Plaintiffs filed their Motion to Amend on January 29, 2021, approximately ten months after the Complaint and approximately seven months after Defendants' Answers. At the time Plaintiffs filed their Motion to Amend and to date, no dispositive motions have been filed and discovery has not reached completion.

By contrast, when courts have denied leave to amend, it is often where a party requests amendment after a lengthier delay and/or at a later stage in litigation. *See, e.g.*, *Jin v. Metro. Life*

*Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (upholding district court's denial of plaintiff's motion to amend, which was filed over four years after the original complaint, over three years after the close of discovery, and almost four months after the ruling on the summary judgment motion); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (upholding district court's denial of plaintiff's motion to amend filed after the time for discovery had run and defendant had filed for summary judgment); *Enzo Biochem, Inc. v. Applera Corp.*, 243 F.R.D. 45, 48 (D. Conn. 2007) ("There is no real dispute that the two-and-a-half-year gap between the filing of the Answer and defendants' Motion for Leave to Amend constitutes a substantial delay."); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (finding that district court's denial of a postjudgment motion for leave to amend based on undue delay abused discretion because it violated the "liberal spirit" of Rule 15.  Accordingly, "delay until the eve of trial" is generally the type of postponement that "courts have found suspect."  *Duling*, 265 F.R.D. at 97.

Northline nonetheless claims that amendment of the Complaint should be barred because Plaintiffs have not adequately explained their delay in seeking to do so.  Plaintiffs' briefs do not address why Plaintiffs waited from March 25, 2020, when the original Complaint was filed, until January 29, 2021, when they moved to amend it.

Northline extracts from *Duling* the statement that "*some* explanation must be provided to excuse a delay."  *Id*.  The magistrate judge in *Duling* went on to say in the same sentence that "even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith."  *Id.* at 98. *Duling* granted plaintiff's motion to amend the complaint where the motion came "two and a half years after the litigation began," the court ruling that "under the liberal standard of Rule 15(a), leave to amend may be appropriate at any stage of the litigation."  *Id*. at 97 (citations omitted). *Duling* notes that "delay is rarely fatal to a Rule 15 motion if it can be explained" and allowed an

11

amended complaint adding, *inter alia*, a new party plaintiff in view of developing exigencies in the case. *Id.* at 97-98. The court reasoned that "the delay here is much smaller than that which courts have found suspect – generally, delay until the eve of trial." *Id.* at 97 (citing *Smith v. City of New York*, 611 F. Supp. 1080, 1093 (S.D.N.Y. 1985), *amended*, No. 82 CIV. 4457-CSH, 1985 WL 1039 (S.D.N.Y. Apr. 30, 1985) ("Plaintiff sought these amendments not at pretrial, but literally on the eve of trial. . . . [P]laintiff bears a heavy burden of persuasion to explain and justify the delay."))

In the case at bar, Plaintiffs stress Northline's concession that the underlying factual allegations of the amendment are unchanged from those in the original Complaint. The CBYD statute Plaintiffs seek to invoke in their Amended Complaint is of course pre-existing. One may regard these circumstances as a "thin" explanation or justification for Plaintiffs' delay of some months in moving to amend their Complaint, but they clearly do not rise to the level of barring amendment. No bad faith on the part of Plaintiffs or undue prejudice to Northline appears. I am satisfied that a denial of Plaintiffs' Motion to Amend as untimely would be an abuse of discretion under *Foman* and its progeny.

### C. Futility of Amendment

Northline finally claims that "Plaintiffs' statutory allegation presents a new cause of action that is unavailable under [the facts of the case], and the amendment is therefore futile." Doc. 34-1 at 6. Leave to amend may be denied as futile when the pleading would not survive a motion to dismiss. *See AEP Energy Services Gas Holding Co. v. Bank of America, N.A.*, 626 F.3d 699, 726 (2d Cir. 2010); *see also Mercer*, 2019 WL 4017309, at *6. Under that standard, the proper inquiry "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (citations omitted).

Courts must accept as true all well-pleaded facts and draw all reasonable inferences in the Plaintiffs' favor. *See Est. of Monroe*, 34 F. Supp. 3d at 319 (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010)) (applying this standard to determine whether leave to amend should be denied as futile). Moreover, in line with the liberal amendment policy of Rule 15, courts have required that claims be severely deficient to deny leave to amend on futility grounds. *See, e.g.*, *In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 754 (2d Cir. 2020) (amendment was futile where "nothing in the record suggests that another complaint could remedy the legal deficiencies set forth [in the dismissed complaint]"); *Abrams*, 2019 WL 6999959, at *5 (amendment to add new claim was futile where new claim failed to name a particular defendant or to indicate who took the relevant actions); *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2019 WL 3491639, at *12 (D. Conn. July 31, 2019) (leave to amend denied where plaintiff's claims against newly added defendants were time-barred).

Northline argues that "the Call Before You Dig Statutes, including § 16-355, are not intended to provide a private right of action grounded in negligence per se. Instead, the statutes are intended to provide [the Public Utilities Regulatory Authority ("PURA")] with the ability to enforce its requirements and assess penalties." Doc. 34-1 at 8. Northline notes that there is "a significant dearth of law regarding the 'Call Before You Dig' statutes at both the federal and state levels." *Id.* at 6. Furthermore, "only one Connecticut Superior Court case cites to General Statutes § 16-355, but the factual circumstances of that case differ from this present case." *Id.* at 6-7.

In that case, *Yankee Gas Servs., Co. v. M. Rondano, Inc.*, No. CV086001382S, 2009 WL 1707123, at *1 (Conn. Super. Ct. May 21, 2009), Northline concedes that the court found

13

negligence per se based on a failure to report a line strike pursuant to Section 16-355.  *Id.* at 7.

However, it argues that "the circumstances of the strike [in *Yankee Gas*] were much more obvious

to the excavator crew than in our case."  *Id.*  Moreover, the "case law is silent on whether a claim

under this statute is appropriate when the excavator is unaware that contact has been made, as

occurred here."  *Id.*  Finally, Northline claims that case law regarding a different statute, the Water

Pollution Control Act ("WPCA"), is "more instructive."  *Id.* at 7.  In this context, Northline

represents that, since the WPCA was intended as a general administrative measure and negligence

per se actions must be based on a standard aimed at individuals, courts have not allowed the WPCA

to be used by individuals as a standard for negligence per se actions.  *Id.* at 7-8.

　　Plaintiffs respond that their proposed amendment is not futile because Section 16-355

provides a basis for a negligence per se claim.  They emphasize that Northline "attempts to

distinguish the reasoning and applicability of *Yankee Gas* not on the law, but on a *disputed fact*

(*i.e.* whether Northline was aware that it struck the line in question)."  Doc. 35 at 3.  However,

Plaintiffs argue, "Section 16-355 expressly provides that knowledge of a strike is not necessary to

violate the statute," and the court in *Yankee Gas* "succinctly concluded" that "'General Statutes §

16-355 supplies a standard of care.'"  *Id.* at 3-4 (citing *Yankee Gas*, 2009 WL 1707123, at *3).

　　Moreover, Plaintiffs aver that Defendants' reliance on cases concerning the WPCA is

misplaced because (1) Connecticut trial courts have reached mixed results on the question of

whether the WPCA supplies the basis of a negligence per se, (2) Northline cites no authority for

the proposition that Section 16-355 was enacted as a broad enforcement tool solely for the benefit

of PURA, and (3) the CBYD laws are based on a clear statutory standard aimed at individuals.  *Id.*

at 4 (citations omitted).  Finally, they note that "[a] number of courts around the country that have

considered their respective Call Before You Dig statutes have held that they create a negligence per se cause of action." *Id.* at 3 n. 2.

Based on the Parties' submissions, and especially given the paucity of case law interpreting Section 16-355, the Court determines that Northline has not met its burden of showing Plaintiffs' claim is futile. Accordingly, Plaintiffs are entitled "to offer evidence to support [their] claims" as the case progresses. *Todd*, 275 F.3d at 198. However, the Court's order does not preclude Northline from addressing Plaintiffs' claim more fully in a dispositive motion at a later stage of the case. *See Connolly*, 2020 WL 6572737, at *6 (citations omitted) ("A determination of futility at this point in the case would require an inquiry . . . that is better addressed at a later stage of this case . . . ."); *see also Mercer*, 2019 WL 4017309, at *6 (Plaintiff "will be left to his proof at trial regarding" his amended pleading, "but futility of amendment is not implicated."). Indeed, as Northline suggests in its opposition to Plaintiffs' Motion to Amend, addressing Plaintiffs' additional claim may involve taking additional discovery and further researching the legislative history and intent of the CBYD statutes. Doc. 34-1 at 5.

### D. Conclusion

In sum, in the absence of undue prejudice, undue delay, or futility of amendment, leave to amend should be freely given. Accordingly, Plaintiffs' Motion to Amend is GRANTED. Plaintiffs are directed to file their proposed Amended Complaint, Doc. 33-2, as a separate docket entry on or before **August 6, 2021**. Northline must answer or respond to Plaintiffs' Amended Complaint on or before **August 20, 2021**.

## II. USIC'S UNOPPOSED MOTION TO ADD A CROSSCLAIM AGAINST NORTHLINE

USIC moves under Federal Rules of Civil Procedure 13(g) and 15 to file a crossclaim asserting statutory apportionment and common law indemnity against Northline. *See* Doc. 29.

USIC represents that Northline does not object, though Northline reserves its rights to contest the content of USIC's claims, and Plaintiffs take no position on USIC's motion. *Id.* at 1, 2.

USIC claims that it correctly mapped the utilities provided on the CBYD maps, but the maps, which Northline prepared, were inaccurate. *Id.* at 1. Accordingly, regarding its apportionment crossclaim, USIC states that, "if USIC is liable to Plaintiff Eversource, then Northline is liable to USIC for some or all of its liability as alleged in the proposed cross-claim." Doc. 29 at 4. Similarly, regarding its common law indemnity crossclaim, USIC argues that "if USIC is found liable to Eversource, then Northline is liable to USIC due to its alleged negligence in carrying out its excavation." *Id.* In sum, claims USIC, "Northline's negligence, rather than USIC's, was the direct, immediate cause of the damage; Northline was in control of the excavation to the exclusion of USIC; and . . . USIC did not know of such negligence, had no reason to anticipate it, and could reasonably rely on Northline not to be negligent."[2] *Id.*; *see generally* Doc. 29-2.

Federal Rule of Civil Procedure 13(g) states that:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant.

Here, USIC's claim against Northline relates to the alleged damage to CL&P's Electrical Facilities that is the subject matter of the original action. Accordingly, it meets the standard of Rule 13(g).

---

[2] The Court notes that USIC refers to CL&P and Eversource collectively as "Eversource." *See, e.g.*, Doc. 29 at 2; Doc. 29-2 at 1. As discussed *infra*, the Court interprets USIC's apportionment and common law indemnity crossclaims to be applicable only to USIC's potential liability under Count One of Plaintiffs' Complaint, CL&P's negligence claim against USIC. Accordingly, the Court infers that USIC's discussions of its alleged liability to "Eversource" and "Plaintiff Eversource" refer to any negligence liability to CL&P under Count One.

Because USIC filed its Answer on June 18, 2020, it also proceeds under Federal Rule of Civil Procedure 15.  A motion for leave to file a supplemental pleading under Federal Rule of Civil Procedure 15(d) "is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."  *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989).  No Party has challenged USIC's motion on these or any other grounds.  Therefore, it also appears to meet the standard of Rule 15.

Regarding USIC's statutory apportionment crossclaim, the Court notes that USIC characterizes this claim as "under Conn. Gen. Stat. § 52-102b" in its Crossclaim Motion.  *See* Doc. 29 at 1.  However, its Proposed Crossclaim states that "USIC is entitled to an apportionment of liability pursuant to Conn. Gen. Stat. § 52-572h."  Doc. 29-2 at ¶ 12.  Section 52-102b of the Connecticut General Statutes allows "defendant[s] in any civil action to which section 52-572h applies" to serve apportionment complaints on "person[s] not a party to the action."  Since Plaintiffs named Northline in their original Complaint, Northline is a party to the action and therefore Conn. Gen. Stat. § 52-102b is inapplicable.  Accordingly, in line with language in the Proposed Crossclaim, the Court interprets USIC's statutory apportionment claim as proceeding under Conn. Gen. Stat. § 52-572h.

"Section 52-572h(c) of the Connecticut General Statutes 'governs the apportionment of liability among multiple tortfeasors.'"  *Endurance Am. Specialty Ins. Co. v. William Kramer & Assocs., LLC*, No. 3:18-CV-00192 (MPS), 2020 WL 5548854, at *3 (D. Conn. Sept. 16, 2020) (quoting *Crotta v. Home Depot, Inc.*, 732 A.2d 767, 771 (Conn. 1999)).  The statute provides:

> In a negligence action to recover damages resulting from . . . damage to property . . .  if the damages are determined to be

17

> proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . . .

The Court notes that Plaintiffs allege two counts against USIC, one for negligence (Count One, CL&P v. USIC) and one for breach of contract (Count Three, Eversource v. USIC). Since USIC's statutory apportionment crossclaim arises under a statute that applies only to negligence actions, the Court interprets this crossclaim as applying only to USIC's potential negligence liability under Count One as opposed to any liability for breach of contract under Count Three.

Similarly, because common law indemnification claims traditionally apply to negligence actions, the Court interprets USIC's common law indemnification claims as applying only to USIC's potential negligence liability under Count One. *See, e.g.*, *Hopkins v. Kawasaki Rail Car, Inc.*, No. 3: 17-CV-839 (CSH), 2017 WL 3715247, at *11 (D. Conn. Aug. 28, 2017) (citation omitted) ("In Connecticut, to state a proper common law indemnification claim, a defendant must show that: "(1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent.")

Subject to the Court's observations regarding USIC's statutory apportionment and common law indemnity crossclaims, USIC's Crossclaim Motion is GRANTED absent objection from any Party and consistent with Federal Rules of Civil Procedure 13(g) and 15. USIC is directed to file its Proposed Crossclaim, Doc. 29-2, as a separate docket entry on or before **August 6, 2021**. Northline must answer or respond to USIC's crossclaim on or before **August 20, 2021**.

### III.    PLAINTIFFS' CONSENT MOTION FOR ENTRY OF PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiffs move for entry of a proposed Protective Order, Doc. 44-1, to "govern the discovery and use of materials designated by the parties as confidential." Doc. 44 at 1. Plaintiffs represent that Defendants USIC and Northline have reviewed the proposed Protective Order and consent to the Court's granting of Plaintiffs' motion. *Id.* "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Nwachukwu v. Liberty Bank*, No. 3:16-CV-00704 (CSH), 2018 WL 2016854, at *2 (D. Conn. May 1, 2018) (citations omitted). "The touchstone of the court's power under Rule 26(c) is the requirement of 'good cause.' The party wishing to seal materials bears the burden of demonstrating good cause as to why the material should be concealed from the public." *Id.* (citing *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 152-53 (S.D.N.Y. 2015) (Sweet, J.)); *see also Penthouse Int'l, Ltd. v. Playboy Enters.*, 663 F. 2d 371, 391 (2d Cir. 1981) ("Where . . . the [discovery is] relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause.").

The Court notes that Plaintiffs do not explicitly discuss good cause in their Motion for Protective Order. However, upon review of the jointly proposed Protective Order, the Court infers "good cause" to grant the Plaintiffs' motion. The Protective Order will apply to, *inter alia*, the disclosure and/or displaying of "Designated Material" marked either (a) "CONFIDENTIAL" or (b) "CONFIDENTIAL-ATTORNEYS' EYES ONLY." Doc. 44-1 at ¶ 2. "'CONFIDENTIAL' information means information, documents, or things that have not been made public or things that have not been made public by the disclosing party and that the disclosing party reasonably and in good faith believes contains or comprises (a) Critical Energy Infrastructure Information, (b) trade secrets, (c) proprietary business information, or (d) information implicating an individual's legitimate [expectation of] privacy." *Id.* at ¶ 3. "'CONFIDENTIAL-ATTORNEY'S EYES

ONLY' means CONFIDENTIAL information that the disclosing party reasonably and in good faith believes is so highly sensitive that its disclosure could result in significant competitive or commercial disadvantage to the designating party." *Id.* at ¶ 4.

The Court agrees that such information is of the type that "should be concealed from the public." *Nwachukwu*, 2018 WL 2016854, at *2. Accordingly, the Court GRANTS Plaintiffs' Consent Motion for Entry of Protective Order and ADOPTS the Parties' jointly proposed Protective Order, Doc. 44-1, as an Order of this Court. The Clerk is directed to ENTER the adopted Protective Order as a separate entry on the case docket.

## IV.    PARTIES' CONSENT MOTION FOR EXTENSION OF TIME

Finally, the Parties move for an extension of discovery deadlines and request that a settlement conference be scheduled with a magistrate judge during September of 2021. *See* Doc. 45. Plaintiffs state that "additional time is required to complete written discovery and to take the required number of depositions of fact witnesses that have been indicated by the [P]arties' disclosures and document production to date." *Id.* at 1. Plaintiffs additionally represent that efforts to comply with the Court's existing Scheduling Order have been slowed due to the circumstances of the COVID-19 pandemic and the remote work environment. *Id.* Since the Parties "expect future and similar impact on the scheduling and coordination of depositions as these circumstances persist," the Parties "desire to align the scheduling order with more realistic estimates for discovery completion dates based on their current experience." *Id.* at 1-2. Defendants USIC and Northline consent to Plaintiffs' motion. *Id.* at 2.

For good cause shown and absent objection, this motion is GRANTED. Accordingly, Plaintiffs' first Motion for Extension of Time, Doc. 30, and second Motion for Extension of Time, Doc. 43, are hereby DENIED AS MOOT. The Court makes the following Order:

1. All discovery shall be completed on or before **December 29, 2021**.

2. All depositions of fact witnesses shall be completed on or before **October 14, 2021**.

3. Plaintiffs will designate their expert witnesses and provide the opposing counsel with reports from such experts pursuant to Federal Rule of Civil Procedure 26(a)(2) on or before **September 14, 2021**.

4. Defendants will designate their expert witnesses and provide the opposing counsel with reports from such experts pursuant to Federal Rule of Civil Procedure 26(a)(2) on or before **November 1, 2021**.

5. Any dispositive motions, including motions for summary judgment, will be filed on or before **January 28, 2022** or forty-five (45) days following the close of discovery, whichever date is later.

6. The parties will file their Joint Trial Management Report on or before **February 28, 2022** or within sixty (60) days after the Court's decision on dispositive motions, whichever date is later.

7. This matter will be ready for trial on **April 15, 2022** or sixty (60) days after the Court's ruling on any dispositive motion, whichever is later.

Finally, in accordance with the Parties' request, the case will be referred to a magistrate judge for a settlement conference in **late September of 2021**. The Court directs the parties to maintain their pursuit of discovery to expedite the case. Should additional time become necessary, they may move for an extension of the discovery deadline with a showing of "good cause." D. Conn. L. Civ. R. 7(b)(2).

## V.     CONCLUSION

The Court has reviewed the pending motions in this action. Based on the foregoing, the Court's ruling is summarized as follows.

1. Plaintiffs' Motion to Amend, Doc. 33, is GRANTED.  Accordingly, Plaintiffs must file their proposed Amended Complaint, Doc. 33-2, as a separate docket entry on or before **August 6, 2021**.  Northline must answer or respond to Plaintiffs' Amended Complaint on or before **August 20, 2021**.

2. Defendant USIC's Crossclaim Motion against Northline, Doc. 29, is also GRANTED.  USIC must file its Proposed Crossclaim against Northline, Doc. 29-2, as a separate docket entry on or before **August 6, 2021**.  Northline must answer or respond to USIC's Proposed Crossclaim on or before **August 20, 2021**.

3. Plaintiffs' Consent Motion for Entry of Protective Order, Doc. 44, is GRANTED, and the Court therefore ADOPTS the Parties' jointly proposed Protective Order, Doc. 44-1, as an Order of the Court.  The Clerk is directed to ENTER the adopted Protective Order as a separate docket entry.

4. Finally, Plaintiffs' most recent Consent Motion for Extension of Time, Doc. 45, is GRANTED, and prior Motions for Extension, Docs. 43 and 30, are DENIED AS MOOT.  Accordingly, the discovery deadlines are extended as set forth *supra* and the case will be referred to a magistrate judge for settlement conference in **late September of 2021**.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         July 22, 2021

/s/ Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge